FILED

2019 APR -4 PM 3: 37

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2018 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>CARLOS ANTONIO AZNARAN,<br>   aka "Twin,"<br>CLIFFORD RAY,<br>ERNESTO GUERRA,<br>ELISA MONTES,<br>ERNIE CONTRERAS,<br>   aka "Ern Dog,"<br>JESSE DUGGINS,<br>   aka "Bullet,"<br>JOSEPH GARCIA,<br>   aka "Low-Key,"<br>VICKIE QUIJADA,<br>   aka "Vee," and<br>JESSICA ROMO,<br>   aka "Batman,"<br><br>          Defendants. | ED CR No. <del>18-CR19</del> **EDCR19-114** <del>JAK</del>   **JGB**<br><br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy to Distribute and Possess With Intent to Distribute Methamphetamine; 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii), (b)(1)(B)(viii): Possession with Intent to Distribute and Distribution of Methamphetamine; 18 U.S.C. § 1029(a)(3): Possession of Fifteen or More Unauthorized Access Devices; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 1956(a)(2)(A): International Promotional Money Laundering; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to Be Done] |

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, and continuing to

on or about April 4, 2019, in Los Angeles and San Bernardino

Counties, within the Central District of California, and elsewhere,

defendants CARLOS ANTONIO AZNARAN, also known as ("aka") "Twin"

("AZNARAN"), CLIFFORD RAY ("RAY"), ERNESTO GUERRA ("GUERRA"), ELISA

MONTES ("MONTES"), ERNIE CONTRERAS, aka "Ern Dog" ("CONTRERAS"),

JESSE DUGGINS, aka "Bullet" ("DUGGINS"), JOSEPH GARCIA, aka "Low-key"

("GARCIA"), VICKIE QUIJADA, aka "Vee" ("QUIJADA"), and JESSICA ROMO,

aka "Batman" ("ROMO"), and others known and unknown to the Grand

Jury, conspired and agreed with each other to knowingly and

intentionally distribute and possess with intent to distribute the

following:

    1.   at least 50 grams of methamphetamine, a Schedule II

controlled substance, in violation of Title 21, United States Code,

Sections 841(a)(1), (b)(1)(A)(viii); and

    2.   at least five grams of methamphetamine, a Schedule II

controlled substance, in violation of Title 21, United States Code,

Sections 841(a)(1), (b)(1)(B)(viii).

B.   MEANS OF THE CONSPIRACY

    The objects of the conspiracy were to be accomplished,

isubstance, as follows:

    1.   Defendant AZNARAN would communicate with unindicted co-

conspirators in order to have defendant AZNARAN receive large amounts

of methamphetamine which defendant AZNARAN would then further

distribute.

    2.   Defendants AZNARAN and MONTES would store and package

methamphetamine at their shared residence.

    3.   Defendant AZNARAN would supply or agree to supply

defendants RAY, CONTRERAS, DUGGINS, GARCIA, and QUIJADA and others

known and unknown with methamphetamine for further distribution.

4.   Defendants CONTRERAS, DUGGINS, GARCIA, and QUIJADA would re-sell the methamphetamine they received from defendant AZNARAN.

5.   Defendant GUERRA would deliver methamphetamine to persons who would re-sell the methamphetamine.

6.   Defendant ROMO would deliver methamphetamine to customers on behalf of defendant QUIJADA.

C.   OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants AZNARAN, RAY, GUERRA, MONTES, CONTRERAS, DUGGINS, GARCIA, QUIJADA, and ROMO, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On September 5, 2017, defendant CONTRERAS possessed approximately 172.11 grams of methamphetamine inside a black Jeep Grand Cherokee in San Bernardino, California.

Overt Act No. 2:   On September 26, 2017, by text message using coded language, an unindicted co-conspirator in Mexico ("UCC-1") sent instructions to defendant AZNARAN about to whom defendant AZNARAN should send money for a narcotics transaction.

Overt Act No. 3:   On September 26, 2017, defendant MONTES attempted to send a wire transfer in the amount of $980 to UCC-1 to pay a narcotics debt, but the transfer was cancelled by Western Union and the amount was returned to defendant MONTES.

Overt Act No. 4:   On October 1, 2017, by text message using coded language, UCC-1 sent instructions to defendant AZNARAN about to whom defendant AZNARAN should send money for a narcotics transaction.

Overt Act No. 5:   On October 1, 2017, defendant AZNARAN sent $980 to UCC-1 via MoneyGram to pay a narcotics debt.

Overt Act No. 6:   On November 1, 2017, by text messages using coded language, defendant QUIJADA arranged for defendant AZNARAN to sell a quarter pound of methamphetamine to an unindicted co-conspirator for approximately $600, and defendant AZNARAN told defendant QUIJADA to have the unindicted co-conspirator call him and defendant QUIJADA provided the unindicted co-conspirator's telephone number.

Overt Act No. 7:   On November 22, 2017, by text message using coded language, defendant GARCIA asked defendant AZNARAN if defendant GARCIA could pick up methamphetamine on behalf of an unindicted co-conspirator.

Overt Act No. 8:   On November 28, 2017, by text message using coded language, defendant QUIJADA and a drug customer discussed having defendant QUIJADA supply the customer with a quarter ounce of methamphetamine for $70, and defendant QUIJADA directed the customer to meet with defendant ROMO to complete the transaction.

Overt Act No. 9:   On November 28, 2017, by text message using coded language, defendants QUIJADA and ROMO discussed the fact that defendant ROMO had met with a drug customer and completed a transaction.

Overt Act No. 10:   On November 29, 2017, by telephone using coded language, defendant AZNARAN spoke to an unindicted co-conspirator about having defendant AZNARAN's supplier in Mexico

supply defendant AZNARAN with an unknown amount of controlled substances.

Overt Act No. 11:   On December 1, 2017, by telephone using coded language, defendant AZNARAN and an unindicted co-conspirator talked about defendant AZNARAN picking up an unknown amount of controlled substances which were concealed in a tire and sent up from Mexico.

Overt Act No. 12:   On December 1, 2017, by telephone using coded language, defendant AZNARAN and an unindicted co-conspirator discussed prices at which defendant AZNARAN sold eighths of an ounce and ounces of methamphetamine.

Overt Act No. 13:   On December 1, 2017, by telephone using coded language, an unindicted co-conspirator asked defendant AZNARAN to supply him with an ounce of methamphetamine and an ounce of heroin, and the two agreed to meet at defendant AZNARAN's residence later that day to complete the transaction.

Overt Act No. 14:   On December 1, 2017, by telephone using coded language, defendants AZNARAN and QUIJADA discussed defendant AZNARAN recently acquiring an unknown amount of methamphetamine, and defendant AZNARAN told defendant QUIJADA that he could supply her with methamphetamine but that the price had increased.

Overt Act No. 15:   On December 1, 2017, by text messages using coded language, defendant QUIJADA asked defendant AZNARAN to sell a quarter ounce of methamphetamine to a customer, and defendant AZNARAN told defendant QUIJADA he would sell the methamphetamine for $60 and told defendant QUIJADA to come to his residence to complete the transaction.

1      Overt Act No. 16:   On December 1, 2017, by telephone using
2   coded language, defendants AZNARAN and DUGGINS discussed defendant
3   AZNARAN supplying defendant DUGGINS with methamphetamine, and
4   defendant AZNARAN told defendant DUGGINS that defendant AZNARAN
5   possessed approximately fifteen pounds of methamphetamine.

6      Overt Act No. 17:   On December 2, 2017, by text message using
7   coded language, defendants AZNARAN and DUGGINS coordinated the
8   delivery of three pounds of methamphetamine from defendant AZNARAN to
9   defendant DUGGINS.

10      Overt Act No. 18:   On December 2, 2017, defendants AZNARAN and
11   DUGGINS met at defendant DUGGINS' apartment complex in Apple Valley,
12   California for the purpose of engaging in a controlled substances
13   transaction.

14      Overt Act No. 19:   On December 2, 2017, by text message using
15   coded language, defendants AZNARAN and DUGGINS discussed meeting the
16   following day so that defendant AZNARAN could collect proceeds from
17   the sale of controlled substances and to supply defendant DUGGINS
18   with more controlled substances.

19      Overt Act No. 20:   On December 2, 2017, by telephone using
20   coded language, defendants AZNARAN and GARCIA discussed defendant
21   AZNARAN supplying defendant GARCIA with an unknown amount of
22   controlled substances, and agreed to meet at defendant AZNARAN's
23   residence.

24      Overt Act No. 21:   On December 3, 2017, by text message using
25   coded language, defendants AZNARAN and GARCIA discussed meeting at
26   defendant AZNARAN's residence later that day.

27      Overt Act No. 22:   On December 3, 2017, by text message using
28   coded language, defendants AZNARAN and DUGGINS discussed defendant

AZNARAN meeting with defendant DUGGINS to supply defendant DUGGINS with two pounds of methamphetamine.

Overt Act No. 23:   On December 4, 2017, by telephone, defendants AZNARAN and DUGGINS discussed meeting so that defendant AZNARAN could collect $2,500 in controlled substance proceeds from defendant DUGGINS.

Overt Act No. 24:   On December 4, 2017, by telephone using coded language, defendants AZNARAN and DUGGINS discussed defendant AZNARAN bringing controlled substances to defendant DUGGINS in San Bernardino, California.

Overt Act No. 25:   On December 4, 2017, defendants AZNARAN and DUGGINS met on a street corner in a residential neighborhood in the city of San Bernardino, California.

Overt Act No. 26:   On December 4, 2017, by telephone using coded language, defendant DUGGINS told defendant AZNARAN that defendant DUGGINS had been stopped by the police after he had met with defendant AZNARAN, but that police had not found any controlled substances in the vehicle, and defendant AZNARAN said that he had $8,000 at present but needed to get up to $10,000 before he met with suppliers the next day.

Overt Act No. 27:   On December 4, 2017, by telephone using coded language, defendant DUGGINS told defendant AZNARAN that defendant DUGGINS would try to collect between $2,000 and $3,000 in controlled substance proceeds to pay to defendant AZNARAN the following day.

Overt Act No. 28:   On December 5, 2017, by text message using coded language, defendant AZNARAN and UCC-1 discussed defendant

1  AZNARAN meeting with defendant RAY so that defendant AZNARAN could

2  deliver four pounds of methamphetamine to defendant RAY.

3      Overt Act No. 29:   On December 5, 2017, by text messages using

4  coded language, defendants AZNARAN and RAY discussed meeting on South

5  Wilmington Ave, in Carson, California.

6      Overt Act No. 30:   On December 5, 2017, defendants AZNARAN and

7  RAY met at a Del Taco restaurant on 223rd St, in Long Beach,

8  California, which is located in the same complex as the restaurant at

9  which defendants AZNARAN and RAY had previously discussed meeting.

10     Overt Act No. 31:   On December 5, 2017, defendant GUERRA

11  followed defendant RAY as defendant RAY drove from the Del Taco

12  restaurant where he had met with defendant AZNARAN, and they ended up

13  at an apartment complex on Centralia Street, in Hawaiian Gardens,

14  California.

15     Overt Act No. 32:   On December 5, 2017, defendant RAY fled in

16  his vehicle from the apartment complex on Centralia Street when he

17  saw law enforcement approaching.

18     Overt Act No. 33:   On December 5, 2017, defendant GUERRA

19  possessed approximately 8,854 grams of methamphetamine in a black

20  speaker box on the rear seat of his vehicle at the apartment complex

21  on Centralia Street in Hawaiian Gardens, California.

22     Overt Act No. 34:   On December 6, 2017, by telephone using

23  coded language, defendants AZNARAN and MONTES discussed having

24  defendant MONTES prepare two units of controlled substances for sale.

25     Overt Act No. 35:   On December 7, 2017, by text messages using

26  coded language, defendants AZNARAN and CONTRERAS discussed a $400

27  debt owed by defendant CONTRERAS to defendant AZNARAN, and defendant

28

1  AZNARAN told defendant CONTRERAS that he could front him an unknown

2  amount of controlled substances.

3      Overt Act No. 36:   On December 7, 2017, by text messages using

4  coded language, defendants AZNARAN and DUGGINS discussed defendant

5  DUGGINS paying defendant AZNARAN at least $800 in methamphetamine

6  proceeds.

7      Overt Act No. 37:   On December 8, 2017, by text messages using

8  coded language, defendants AZNARAN and DUGGINS discussed having

9  defendant DUGGINS' wife send a wire transfer to defendant AZNARAN's

10 wife, defendant MONTES, to pay off a controlled substance debt.

11     Overt Act No. 38:   On December 8, 2017, by text message,

12 defendant DUGGINS' sent defendant AZNARAN a photo of a receipt

13 indicating payment of $900 to defendant AZNARAN's wife, defendant

14 MONTES, via Walmart2Walmart wire transfer.

15     Overt Act No. 39:   On December 10, 2017, by text message using

16 coded language, defendant CONTRERAS told defendant AZNARAN that

17 defendant CONTRERAS would pay defendant AZNARAN $200 for a controlled

18 substance debt.

19     Overt Act No. 40:   On December 11, 2017, by text messages using

20 coded language, defendant QUIJADA asked defendant AZNARAN how much an

21 amount of controlled substances was supposed to weigh, and defendant

22 AZNARAN said it should be "112.0" grams.

23     Overt Act No. 41:   On December 13, 2017, by text message using

24 coded language, defendant CONTRERAS asked defendant AZNARAN to supply

25 him with an unknown amount of controlled substances because defendant

26 CONTRERAS' customers were calling him.

27     Overt Act No. 42:   On December 15, 2017, by text message using

28 coded language, defendant AZNARAN sent to an unindicted co-

conspirator the names of persons owing controlled substance debts to defendant AZNARAN, including a reference to defendant CONTRERAS owing $200 to defendant AZNARAN.

Overt Act No. 43:  On January 12, 2018, by telephone using coded language, defendant AZNARAN and an unindicted co-conspirator discussed controlled substances which were contained in a safe in their shared residence, and defendant AZNARAN told the unindicted co-conspirator that defendant MONTES was supposed to return controlled substances to the safe.

Overt Act No. 44:  On January 12, 2018, by text messages using coded language, defendants AZNARAN and QUIJADA discussed having defendant QUIJADA locate controlled substances that were stored at defendant AZNARAN's residence, defendant QUIJADA said that defendant MONTES was insisting that the controlled substances were in the safe in the residence, and then defendant AZNARAN asked if defendant QUIJADA had any "white" on her, referring to methamphetamine.

Overt Act No. 45:  On January 12, 2018, by text messages using coded language, defendant AZNARAN asked defendant QUIJADA if she had any methamphetamine that defendant AZNARAN wanted to give to an unindicted co-conspirator.

Overt Act No. 46:  On January 16, 2018, by telephone using coded language, defendants AZNARAN and MONTES argued about a prior instance during which defendant AZNARAN could not locate controlled substances, and defendant MONTES said she had weighed out the controlled substances for defendant QUIJADA and set them aside.

Overt Act No. 47:  On January 17, 2018, by text message using coded language, defendant AZNARAN and UCC-1 discussed defendant AZNARAN's possession of $4,000 to pay off a controlled substance

debt, and UCC-1 said that if defendant AZNARAN could pay $8,000, UCC-1 could supply five pounds of methamphetamine.

Overt Act No. 48:   On January 17, 2018, defendants AZNARAN and MONTES possessed approximately 26.8 grams of methamphetamine inside a safe at their shared residence in San Bernardino, California.

Overt Act No. 49:   On February 20, 2018, defendant GARCIA sold a confidential informant working on behalf of law enforcement approximately 48.3 grams of methamphetamine in a parking lot in San Bernardino, California.

Overt Act No. 50:   On April 12, 2018, defendant ROMO possessed approximately 19.74 grams of methamphetamine at the Central Detention Center, in San Bernardino, California.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about September 5, 2017, in San Bernardino County, within the Central District of California, defendant ERNIE CONTRERAS, also known as "Ern Dog," knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 172.11, grams of methamphetamine, a Schedule II controlled substance.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about December 5, 2017, in Los Angeles County, within the Central District of California, defendant ERNESTO GUERRA knowingly and intentionally possessed with intent to distribute at least fifty grams, that is, approximately 8,854 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii); 18 U.S.C. § 2(a)]

On or about January 17, 2018, in San Bernardino County, within the Central District of California, defendants CARLOS ANTONIO AZNARAN, also known as "Twin," and ELISA MONTES, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 26.8 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about February 20, 2018, in San Bernardino County, within the Central District of California, defendant JOSEPH GARCIA, also known as "Low-key," knowingly and intentionally distributed at least five grams, that is, approximately 48.3 grams of methamphetamine, a Schedule II controlled substance.

1

2

3

4

5

6

7

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about April 21, 2018, in San Bernardino County, within the Central District of California, defendant JESSICA ROMO, also known as "Batman," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 19.74 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SEVEN

[18 U.S.C. § 1029(a)(3)]

On or about January 17, 2018, in San Bernardino County, within the Central District of California, defendant VICKIE QUIJADA, also known as "Vee" ("QUIJADA"), knowingly and with intent to defraud, possessed at least fifteen unauthorized access devices (as defined in Title 18, United States Code, Sections 1029(e)(1) and (3)), namely, approximately 70 social security numbers, credit card numbers, and bank account numbers, all belonging to persons other than defendant QUIJADA, with said possession affecting interstate and foreign commerce.

COUNT EIGHT

[18 U.S.C. § 1028A(a)(1)]

On or about January 17, 2018, in San Bernardino County, within the Central District of California, defendant VICKIE QUIJADA, also known as "Vee" ("QUIJADA"), knowingly possessed, without lawful authority, a means of identification that defendant QUIJADA knew belonged to another person, that is, the name of victim M.G., during and in relation to the offense of Possession of Fifteen or More Unauthorized Access Devices, a felony violation of Title 18, United States Code, Section 1029(a)(3), as charged in Count Seven of this Indictment.

COUNT NINE

[18 U.S.C. § 1029(a)(3)]

On or about April 21, 2018, in San Bernardino County, within the Central District of California, defendant JESSICA ROMO, also known as "Batman" ("ROMO"), knowingly and with intent to defraud, possessed at least fifteen unauthorized access devices (as defined in Title 18, United States Code, Sections 1029(e)(1) and (3)), namely, approximately 16 social security numbers, bank account numbers, and retirement account identification numbers, all belonging to persons other than defendant ROMO, with said possession affecting interstate and foreign commerce.

COUNT TEN

[18 U.S.C. § 1028A(a)(1)]

On or about April 21, 2018, in San Bernardino County, within the Central District of California, defendant JESSICA ROMO, also known as "Batman" ("ROMO"), knowingly possessed, without lawful authority, a means of identification that defendant ROMO knew belonged to another person, that is, the name of victim K.O., during and in relation to the offense of Possession of Fifteen or More Unauthorized Access Devices, a felony violation of Title 18, United States Code, Section 1029(a)(3), as charged in Count Nine of this Indictment.

COUNTS ELEVEN THROUGH FIFTEEN

[18 U.S.C. §§ 1956(a)(2)(A), 2(b)]

On the following dates, in San Bernardino County, within the Central District of California, and elsewhere, defendant CARLOS ANTONIO AZNARAN, also known as "Twin" ("AZNARAN"), knowingly transported, transmitted, and transferred, and willfully caused to be transported, transmitted, and transferred, and attempted to transport, transmit, and transfer, monetary instruments and funds to a place outside the United States, namely, Mexico, from and through a place inside the United States, namely, California, with the intent to promote the carrying on of specified unlawful activity, specifically, conspiracy to distribute and distribution of controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), through the following transactions:

| COUNT | DATE | FINANCIAL TRANSACTION |
|-------|------|----------------------|
| ELEVEN | 10/1/2017 | Wire transfer of $980 from Woodland, California, to an unidentified person in Tijuana, Mexico, in Western Union transaction number 849-790-8313 |
| TWELVE | 10/1/2017 | Wire transfer of $980 from Kettleman City, California, to an unidentified person in Tijuana, Mexico, in MoneyGram transaction number 38942583 |
| THIRTEEN | 10/2/2017 | Wire transfer of $980 from Colton, California, to an unidentified person in Tijuana, Mexico, in MoneyGram transaction number 43485462 |

| COUNT | DATE | FINANCIAL TRANSACTION |
|-------|------|----------------------|
| FOURTEEN | 10/18/2017 | Wire transfer of $980 from San Bernardino, California, to an unidentified person in Tijuana, Mexico, in Western Union transaction number 535-415-6269 |
| FIFTEEN | 1/2/2018 | Wire transfer of $980 from San Bernardino, California, to an unidentified person in Culiacan, Mexico, in Western Union transaction number 395-020-5738 |

A TRUE BILL

/s/
_____
Foreperson

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

JUSTIN R. RHOADES
Assistant United States Attorney
Chief, Violent & Organized Crime
Section

SCOTT LARA
Assistant United States Attorney
Violent & Organized Crime Section